DIRECTORS OF THE BOSTON AND ALBANY RAILROAD COMPANY, petitioners.

Norfolk.    March 13, 1922. — July 11, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Grade Crossing*, Railroad.  *Damages*, Apportionment of expense of rebuilding railroad bridge over way.

Upon a petition for the appointment of a special commission to determine the question relative to the rebuilding of a bridge at a crossing of a railroad over a public way, it appeared that the county commissioners decreed that the existing superstructure should be removed and a new bridge constructed with more and larger and stronger beams, that the stone abutments remained unchanged except as it became necessary to enlarge the old and to cut in seats for the new beams, that the new superstructure also required a system of bracing between the beams and small concrete back walls were to be placed in the rear of the abutments, but the spatial proportions and general conditions of the way were to remain unchanged. It also appeared that in the original layout of the way was a provision, which was accepted by vote of the town, that the town would pay the cost of all future alterations in the bridge. The special commission decided that the cost of alteration of the bridge should be borne by the town. Upon a petition by the town for a jury to revise this decision, the jury, by order of the judge, returned a verdict that the town should "pay the charges and expenses of making such alteration." *Held*, that

(1) The general authority of revision given to the jury by St. 1906, c. 463, Part I, § 27, was broad enough to include an assessment and apportionment of the cost of making the alterations as between the railroad company and the town;

(2) The action of the commissioners and of the trial court in holding that the change was an alteration was not erroneous as matter of law;

(3) The provision in the layout that the town would pay the cost of future alteration and maintenance of the bridge was not violative of public policy, and possible future expenditures to which it subjected the town not being improper subjects for taxation, it was not illegal;

(4) A finding was warranted that the vote of the town accepting the way as laid out was intended and was acted upon by the parties as a mutual contract.

(5) The entire expense of the alteration should be assessed to the town.

PETITION, filed in the Superior Court on April 8, 1918, under St. 1906, c. 463, Part I, §§ 23, 25, 26, as amended by St. 1908,

c. 542, §§ 1, 2,* for the appointment of a special commission to determine the question relative to the rebuilding of a bridge at a crossing of the Boston and Albany railroad over Clinton Path in Brookline under decree of the county commissioners of Norfolk County entered on March 26, 1918.

A commission was appointed and filed a report, which is described in the opinion. Thereafter the town of Brookline applied, under St. 1906, c. 463, Part I, § 27, for revision of the award of the special commission. The application was tried before *Hall*, J. Material evidence is described in the opinion.

It was agreed by counsel for the petitioners and the town that the sum expended by the railroad company in doing the work ordered by the county commissioners was $2,201.81. It was conceded by both parties that no part of this expense or the future charges for keeping the crossing in repair should be borne by the county of Norfolk.

At the conclusion of the evidence, the judge ordered the jury at the request of the petitioners and against the objection of the respondents to return a verdict in the nature of special findings as follows:

"1. That the town of Brookline shall pay the charges and expense of making the alteration set forth in the decree of the County Commissioners.

"2. That the town of Brookline shall pay the future charges for keeping said crossing in repair."

By consent of the parties a verdict in the nature of a special finding was returned as follows:

"3. That the expenses of this proceeding shall be borne equally by the parties, namely, that the town of Brookline shall pay three hundred and twenty-five (325) dollars, and the Boston and Albany Railroad Company three hundred and twenty-five (325) dollars."

At the request of the respondent, the judge reported the case for the determination of this court, upon the terms that "If the case should have been submitted to the jury, the verdict is to be set aside, except as to the third special finding, and the case re-

---

* St. 1908, c. 542, approved May 26, 1908, amending St. 1906, c. 463, Part I, §§ 23, 25, is printed in the report of *Selectmen of Brookline, petitioners*, 236 Mass. 260.

manded to the Superior Court for a new trial, but, if my ruling was correct, the case is to be remanded to the Superior Court for the entry of a decree upon the verdict."

*W. D. Turner*, for the respondent.

*R. A. Stewart*, for the petitioners.

BRALEY, J. It appears from the report of the special commissioners and the documents introduced at the trial, which comprise all the evidence, that Clinton Path in the respondent town, which crosses the railroad underneath the tracks, is a public way for the use of pedestrians only. In 1916, the petitioners having decided that a stronger bridge over the path must be constructed to support the heavy locomotives then in use, entered into correspondence with the respondent, claiming that under the wording in the original layout of the path, the new bridge would be an "alteration," the cost of which should be borne by the town. The town however having refused to recognize any liability, the petitioners filed with the county commissioners a petition in which it was stated that "an alteration which does not involve the abolition of a crossing at grade, should be made in said crossing." St. 1906, c. 463, Part I, § 23, as amended by St. 1908, c. 542, § 1. The county commissioners, after a hearing at which the town was represented by counsel, adjudicated and determined that common convenience and necessity required that the crossing be "altered," and the decree provided that the existing superstructure should be removed and a new bridge constructed with more and much larger and stronger beams. The stone abutments remained unchanged except as it became necessary to enlarge the old and to cut in seats for the new beams. The new superstructure also required a system of bracing between the beams, and small concrete back walls were to be placed in the rear of the abutments. But the spatial proportions and general conditions of the path were to remain unchanged. The bridge having been built by the petitioners in accordance with the decree, and the special commissioners having decided that the town should pay the cost and the future charges of keeping the crossing in repair, it petitioned for a jury to revise the award.

By St. 1906, c. 463, Part I, § 27, "A party who is aggrieved by said award may, within fourteen days after it has been so returned, apply to the court for a jury to revise and determine any matter of fact found therein; and thereupon the court, after notice to all

parties interested, shall order a trial by jury in the same manner as civil cases are tried by a jury. The decree of the court upon said award or upon the verdict of a jury shall be final and binding, and said court shall have jurisdiction in equity to enforce compliance therewith. . . ." The general authority of revision given to the jury is broad enough to include and apportion the cost of making the alterations as between the railroad company and the town. *Boston & Albany Railroad* v. *Newton*, 148 Mass. 474, 475. *Boston & Lowell Railroad* v. *Winchester*, 156 Mass. 217. And by St. 1906, c. 463, Part I, § 25, as amended by St. 1908, c. 542, § 2, the special commission shall determine which party shall carry their decision into effect and "shall pay the charges and expenses of making such alteration and the future charges for keeping such bridge or crossing and the approaches thereto in repair. . . ."

The trial judge directed the jury "to return a verdict in the nature of special findings," which so far as material sustained the conclusions of the commissioners, and reported the case to this court. "If the case should have been submitted to the jury, the verdict is to be set aside . . . and the case remanded . . . for a new trial, but, if my ruling was correct, the case is to be remanded . . . for the entry of a decree upon the verdict."

It is contended that the changes constituted a reconstruction of the bridge and cannot be treated as an alteration. The town was required to maintain Clinton Path, a public footway, in a reasonably safe condition for the use of travellers. If it becomes necessary for the public safety to build a new bridge to replace an old and worn out bridge where the highway passes overhead, as in *Selectmen of Brookline, petitioners*, 236 Mass. 260, the replacement of an old bridge by a new and stronger one where the way passes across the railroad location underneath the tracks is on the same footing. The physical changes, the expense, and the resulting convenience and safety of the public well may be as great in one case as in the other. By St. 1908, c. 542, § 1, St. 1906, c. 463, Part I, § 23, was so extended as to "include any case where there is need of the rebuilding of a highway bridge or any structural change or renewal for the purpose of strengthening or improving it." "It is for the Legislature to determine where such burdens shall rest, and it may delegate their apportionment without prescribing a definite rule upon which it shall be made." *Kingman*,

*petitioner*, 153 Mass. 566, and cases cited. *Boston & Lowell Railroad* v. *Winchester*, 156 Mass. 217. The words "or in a bridge at the crossing" in St. 1906, c. 463, Part I, § 23, appear in substance in St. 1874, c. 372, § 96, the first codification of the railroad law of the Commonwealth, and are continued in Pub. Sts. c. 112, § 129, and R. L. c. 111, § 134. It has been decided in the application of these enactments, that the widening of a highway or bridge, the erection of a new bridge in the abolition of a crossing at grade; and the reconstruction of a railroad bridge over a highway by superimposing on the masonry a new structure for the diversion of water which would prevent it from reaching the masonry where it would seep and fall upon the highway, constitute an alteration. *Davis* v. *County Commissioners*, 153 Mass. 218, 227. *Boston & Lowell Railroad* v. *Winchester*, 156 Mass. 217. *Boston & Albany Railroad* v. *County Commissioners*, 164 Mass. 551, 554. *New England Railroad* v. *Railroad Commissioners*, 171 Mass. 135, 138. *Boston & Albany Railroad* v. *County Commissioners*, 177 Mass. 511, 512. *New York, New Haven & Hartford Railroad* v. *Blackstone*, 184 Mass. 491. *Aldermen of Fitchburg* v. *Boston & Maine Railroad*, 203 Mass. 304, 309. See *Bennett* v. *Wellesley*, 189 Mass. 308, 315, 316; *Selectmen of Brookline, petitioners*, 236 Mass. 260. The petition, the decree, the layout, and the vote of acceptance of the town all refer to the change as an "alteration." It was said in *Boston & Albany Railroad* v. *County Commissioners*, 164 Mass. 551, 553, a petition for a writ of certiorari to quash the proceedings of the county commissioners in ordering certain things to be done to a bridge crossed by the petitioner's railroad, "We think the statute requires only that the officials who apply for an alteration shall have determined that some alteration, the general nature of which is disclosed by the petition, is necessary, and that upon such a petition . . . the commissioners have jurisdiction to proceed, and to determine whether any alteration is necessary, and, if so, what alteration, and to prescribe the manner and limits within which it shall be made." "In the present case, the alteration . . . appears to be in substance what was contemplated in the original petition, and we have nothing before us which enables us to see that the purpose could be accomplished in any better . . . way. A reasonable presumption must be made in favor of the . . . result arrived at by the commissioners." *Selectmen of Westborough,*

*petitioners*, 169 Mass. 495, 497, and cases cited. The action of the commissioners and of the trial court in holding that the change was an alteration was not erroneous as matter of law.

We are accordingly of opinion that the expense of the work and materials, and of future maintenance, could lawfully be imposed wholly or partially upon the town, or it could be entirely relieved, as the jury might determine under suitable instructions, if it were not for the provisions incorporated and accepted by the railroad in the layout of Clinton Path as a public way. The special commissioners in their report state the following facts, which are not in dispute: The railroad now operated by the petitioners across the location in question was first laid out and constructed by the Charles River Branch Railroad Company, but at what date did not appear although it was in use as early as 1851. The land on each side of the railroad consisting of thirty-nine acres was owned by Samuel Henshaw, and at some time a cattle pass was built under the railroad to permit cattle to pass from one part of the farm to the other. In 1864, Mary B. Pierce became owner of the Henshaw land, and for the purposes of developing the property she "constructed the steps, approaches and the entire underpass about as it now exists, making them useful for pedestrians who wished to pass between Fisher Hill and Beacon Street. . . . The entire rebuilding of this subway including the approaches, was done at the expense of the Pierce estate, and, as evidenced by its present appearance and condition, in a substantial manner." It is conceded that Clinton Path was a private way prior to 1901, when the town decided that public convenience required it should be made a public or town way. But the proposed way passed under a railroad, and even if under Pub. Sts. c. 49, § 65, the town had the right to lay out the way, yet under c. 112, § 128, it could not be laid across the railroad location without obtaining the sanction of the county commissioners. The town also if Clinton Path were made a public way would be obliged to condemn and take for the purpose "fourteen hundred and ninety-two square feet of land belonging to the petitioner," for which it would be liable in damages. Pub. Sts. c. 49, § 14. *Boston & Albany Railroad* v. *Cambridge*, 159 Mass. 283. *New York, New Haven & Hartford Railroad* v. *Blackstone*, 184 Mass. 491, 497. The commissioners say, "some discussion arose . . . as to the land damages which were to be

paid, if any. Eventually an arrangement was entered into between the town and the railroad; and in the petition" of the selectmen to the county commissioners states:

"The undersigned, Selectmen of the Town of Brookline, respectfully request you to authorize the Town of Brookline to lay out a way across the Boston and Albany Railroad and beneath the tracks thereof, about seven hundred and fifty . . . feet westerly from the Dean Road Bridge over said Railroad, as shown upon a plan made by Alexis H. French, Town Engineer, dated January 23rd, 1901, herewith filed and made a part of this petition, the land to be included in said way being shown in said plan as bounded by lines shaded red. And the said Selectmen aver that public convenience and necessity require the laying out of said way.

"It being the intention of the Selectmen to incorporate in the laying out of said way, if it shall be authorized by your Honorable Board, the following provision, to wit: —

"It is not the purpose of this location to require the working at the present time of so much of the way as lies within the limits of the location of the Boston and Albany Railroad to its full width and extent, but the right to work the same to its full width and extent within the limits of said railroad location at any time hereafter is hereby expressly taken, and if any alteration shall be made at any time hereafter in the crossing of said way and said railroad, in the approaches thereto, in the location of the railroad or way, or in the bridge at the crossing, all the costs and expenses of making such alterations and all future charges for keeping the crossing and approaches in repair are hereby assumed by and are to be paid by the town of Brookline, and the town will employ the Boston and Albany Railroad, or its successors or assigns to do all the work of such alterations within the railroad location, and will pay a reasonable compensation therefor."

The county commissioners after full proceedings entered a decree which, after reciting the petition, the description of the locality by metes and bounds, namely, "Clinton Path, Brookline," concluded in these words:

"And it is determined by the Commissioners that the said Selectmen shall incorporate in their laying out of said way as prayed for in said petition, the following provision, to wit:

"It is not the purpose of this location to require the working at

the present time of so much of the way as lies within the limits of the location of the Boston and Albany Railroad to its full width and extent, but the right to work the same to its full width and extent within the limits of said railroad location at any time hereafter is hereby expressly taken; and if any alteration shall be made at any time hereafter in the crossing of said way and said railroad in the approaches thereto, in the location of the railroad way, or in the bridge at the crossing all the costs and expenses of making such alterations and all future charges for keeping the crossing and approaches in repair are hereby assumed by and are to be paid for the town of Brookline and the town will employ the Boston and Albany Railroad or its successors or assigns to do all the work of any such alteration within the railroad location and will pay a reasonable compensation therefor."

The way was thereafter laid out under and in compliance with the decree by the selectmen, who reported to the town under an article in the warrant, "To accept and allow Clinton Path as laid out by the Selectmen and reported to the town at this meeting; and to appropriate $250 for construction." The report of the selectmen says, "Clinton Path extends from Clinton Road down the steep bank to the Boston and Albany Railroad, then under the railroad and along an embankment belonging to the city of Boston to Beacon Street near the Leyden Congregational Church. It forms a convenient short cut from a large part of Fisher Hill to the electric cars on Beacon Street. Starting at Clinton Road there is a long flight of granolithic steps with iron handrails running down to the railroad, which is crossed by a subway. All this has been admirably constructed by the Jacob W. Pierce estate at their own expense, and is offered to the town free of cost. North of the railroad the location is over water pipes of the city of Boston. Along this part of the path, it is proposed to lay a plank walk and to build a simple fence. The location is forty feet wide for most of the distance except under the railroad. Arrangements have been made by the Park Commissioners for the purchase of a small strip lying between the easterly line of the location and land purchased last year for a playground. Neither the city nor the railroad makes any claim for damages. The County Commissioners have approved the crossing of the railroad. The estimated cost of the plank walk and fencing is about $250.

"The following vote is recommended: —

"Voted, That Clinton Path as laid out by the Selectmen and reported to the town at this meeting be accepted and allowed, and that $250 be appropriated for construction, the amount to be taken from any unexpended balances or money in the treasury not otherwise appropriated."

The layout then follows precisely as set forth in the decree of the county commissioners.

The town thereupon voted, "that Clinton Path as laid out by the Selectmen and reported to the town at this meeting be accepted and allowed, and that $250 be appropriated for construction, the amount to be taken from any unexpended balances or money in the treasury not otherwise appropriated."

The layout and establishment of Clinton Path as a public way conferred no benefit on the railroad corporation. The town as between itself and the railroad corporation was bound to keep the whole of the bridge within the specified limits of the decree reasonably safe and convenient for travellers. The expense of construction and maintenance under Pub. Sts. c. 112, § 128, would have to be borne by the town until otherwise determined by the award of a special commission. Its liability to compensate the railroad corporation in such damages as a jury might assess for land taken afforded a sufficient reason for the compromise which is not violative of public policy, and did not subject the town to possible future expenditures for which the inhabitants could not lawfully be taxed. *Old Colony Railroad* v. *New Bedford,* 188 Mass. 234, 236, and cases cited. It should be given the same force and effect as if the railroad corporation had conveyed by deed an easement over its land in consideration of the town obligating itself as shown by the provisions of the layout; or as if the town had submitted the vote to the railroad corporation as a proposal that the way should be established as laid out, upon acceptance of the proposal by the railroad. *Woburn* v. *Henshaw,* 101 Mass. 193. *Childs* v. *Boston & Maine Railroad,* 213 Mass. 91, 93, 94. *Plimpton* v. *New York, New Haven & Hartford Railroad,* 221 Mass. 548, 550. *Howland* v. *Greenfield,* 231 Mass. 147, 150. It also could be found as the commissioners in substance have found, that the vote was intended and acted upon by the parties as a mutual contract, and not as the settling of the terms of an

agreement into which they proposed to enter after all the details had been adjusted. *Roberts* v. *Cambridge*, 164 Mass. 176, 181; *S. C.* 170 Mass. 199. *Plimpton* v. *New York, New Haven & Hartford Railroad, supra.* The town moreover could lay out the path only in accordance with the decree, and it did not attempt to bargain away, or infringe upon the exercise of its right to discontinue the way if in the future such action should be deemed advisable. The taking was the voluntary action of the town in which the right of the railroad corporation to compensation was not only recognized but adjusted by the provision, that if, in the future, alterations became necessary, which were either agreed upon by the parties, or lawfully authorized by the public authorities, the railroad corporation would not be required to share in the expense. The case is remanded for the entry of a decree upon the verdict.

*So ordered.*